will start with United States v. Santiago-Ortiz. Are you comfortable enough doing it that way? Thank you, Your Honors. May it please the Court, I'm Lucas Anderson, here for the appellant Jose Santiago-Ortiz. I'll begin with our sufficiency argument with respect to counts 1, 2, and 4. The fact that someone's involved in a narcotics conspiracy does not mean that every violent crime committed by that person automatically qualifies as a conspiracy-related offense. There has to be some evidence of a connection between the drug conspiracy and the defendant's involvement in the charged murder. In this case, all of the admissible evidence showed that the defendant was motivated by a desire to exact revenge for his own brother, who they held – who had been badly beaten and slashed during a fight with the victim six months before. Serial plus code, who was the only witness to the murder who testified at trial, confirmed that the initial fight between strangers at a pool hall stemmed from a personal dispute that had nothing to do with drug activities. The defendant wasn't involved in drugs at all. Well, his brother, though, his brother, who was the person who was slashed, was the manager of the drug organization, right? Yes. At the time, he was the manager of the street-level dealers of the drug organization. So why wouldn't it be important if the manager of your drug operation is slashed for you to – in order to make sure there's respect for the drug gang to retaliate? That could have been a reason for him to have done it. There was no evidence that he did that, as there was in the Vernacci case, which the government relies on. But in this case, when they approached the defendant on an abandoned street far from the drug organization's turf, 4 o'clock in the morning, they didn't say something like, oh, we run these streets or nobody messes with the flow organization. The brother said, look what you – quote, you remember what you did to my face, and then told the defendant to shoot the victim. There was nobody – there's no evidence – Hold on a second, Phil. They left the location. They brought their supplier back to the location, right? The supplier of their drug organization. They left the location, got a gun, got their supplier, and brought the supplier with them, right? The supplier was the one driving them. Right. He was the one who was able to transport them. Isn't that a connection to the drug organization as well? The victim is the manager of the drug organization. In avenging the slashing, they bring their supplier with them. Why aren't those all nexuses to the drug organization, especially where there was something in the record that suggested that they wanted the supplier to supply only them, right? Wasn't there a whole conversation about that supplier only supplying? Yes. And there was a drug-related incident of violence related to that, where the defendant and others had been involved in acts of violence against rival suppliers in the neighborhood on Fairmont Avenue, and that they had, after that incident of violence, which was related to the drug organization, which the government didn't charge, they told their supplier – Because this was indeed related to the narcotics operation? No, because the overwhelming weight of the evidence showed that Cruz was not involved because they were trying to impress him or anything like that. They saw this person at the pool hall where the defendant's brother – Why bring him back at all? He wasn't there during the first encounter. He was driving them. He was driving – he wasn't at the scene of the murder. The government's brief, I think, sort of suggests that he was actually at the murder, but the video evidence and all the testimony at trial showed that he had dropped them off. He wasn't actually present at the scene of the murder. And when he described it, the supplier, later on to his own wholesale supplier, he didn't say, oh, this was a drug-related thing. He said it only in 2015, five years after the crime, when he had a reason to – There was also evidence that the business did much better after this murder because the message was indeed sent. Well, there's no evidence that anybody outside of the conspiracy was actually ever told about the murder. And even if it wasn't for this Court's prior decision in the Farmer case – You're trying to instill fear or try to get a supplier to supply only you, right? If that's your goal, I'm going to show the supplier how tough we are so that he'll only supply us. You don't need to tell people outside the organization, right? You're showing him. You're bringing him. And then I think there was also evidence that they told – there was testimony that they told one of the workers as well, right? They told one of their own workers. There's no evidence that anybody outside the organization was told. And I want to note that this Court said in Farmer that the relevant question is not whether a defendant's position in an enterprise was, in fact, advanced because of that murder, but it's whether his purpose at the time in committing that murder was to benefit his own position. There's no evidence that anybody, including the defendant or his brother, had been looking for this person during the six months in between. They just happened to encounter him. And the fact that they had their own supplier with them at the time who was driving them. Because they're not looking for the person. A lot of times gangs come up upon a people who disrespect them in some way, and they take active violence against them to improve their reputation, right? It doesn't have to be planned for it to be important for the gang, when they think they're disrespected in some way, to take action, right? It doesn't have to be planned. No, it does not have to be planned. But again, this was committed far away from the drug organization's turf. In the middle of the night, there's no evidence that they told anybody outside of it. The government's brief keeps saying, oh, they wanted to inspire fear, and they did inspire fear. It worked. There's no evidence at all that anybody outside of the organization was ever told about it. There were plenty of – there was plenty of testimony from Anthony Ramos about acts of violence that were related to drugs, but for some reason they didn't charge any of those. You know, the personal angle here is much stronger than it was even in the Bruno case. In Vernacci, which the district court relied on, this court distinguished Bruno and said it's understandable that the defendant in that case would violently retaliate for personal reasons against someone who he owed money to and who he had suspected robbed him in the past. And that defendant was also trying to switch crews from one Genovese crime family to another. Here, the personal angle is so much stronger, and the only evidence that was actually admitted with respect to the defendant's motive to try and tie his motive to the drug conspiracy was not admitted for its truth. It was admitted as – the jury was instructed not to consider it for its truth. And I want to briefly address our challenge to those hearsay statements, because it was an abuse of discretion under Rule 403 to admit those statements for non-hearsay purposes if the jury was likely to consider them for the truth. The defense counsel at trial conceded almost everything except for the connection between the murder and the drug conspiracy. This Court's decisions in Rays and Forrester, which we discussed at length in our principal brief, they're exactly on point. All of the factors that are required to be considered under those cases indicate that the challenge statements here should not have been admitted. In Rays, this Court specifically said that the greater the likelihood of prejudice stemming from the jury's misuse of the statement, the greater the justification needed to – You're not challenging that Cruz's statement about why he was involved in the murder could come in, right? That could come in, right? You aren't challenging that part of the statement, right? Only insofar as it was not relevant to any disputed issue, and so the jury was obviously going to take the one statement at trial with respect to the defendant's motives and consider that for its truth. There was plenty of other evidence, including the other things in the government's supplemental appendix regarding Cruz's own motives, regarding Lizardi's own motives. If you look at the Forrester and Rays factors, every single one of them weighs against the admission of those statements in this case. Let's assume we believe that Cruz's statement should come in, right? Then how could you understand that statement? If he said, I did it for the same reason, how could you possibly understand what that reason is without the other part coming in? You wouldn't be able to, but the point under Rays and Forrester is that there was plenty of other evidence regarding Cruz's own motives such that the statement couldn't come in. If you look at those factors, even if it might have had some relevance to something, but it didn't because defense counsel conceded the defense participation in the racketeering enterprise and in the conspiracy. So it was relevant to proving the charges of the indictment, but not to anything that was actually disputed. Cruz's own motives were not in dispute at all, and there was plenty of other evidence. The desire for the gang, again, to generally promote its reputation and to instill fear was disputed. That was an important part of the case in addition to the individual motive of the defendant, right? No. It was all about the defendant's own motive in committing the murder, whether his purpose was to advance his own position in the enterprise. And it's important to remember, the only reason his position was advanced in the enterprise was because his brother, who had been his superior, was arrested very soon after this case and incarcerated. That's the only reason that his position was, in fact, advanced by this. Do you think you've saved some time for rebuttal? Yes, I have. Thank you, Your Honors. May it please the Court. My name is Shawn Crowley. I represent the government on appeal, and I also represented the government in the proceedings below. Jose Santiago Ortiz shot and killed Jerry Tide on September 11th 2010. He shot him nine times at the direction of his brother and co-conspirator with his heroin supplier, Ramon Cruz, waiting nearby. He shot and killed Jerry Tide to avenge the disrespect shown to his brother and his drug crew and to prove to his supplier that he was tough and that the flow heroin business belonged to him. So what is the evidence in the record of the latter? I'm sorry, I didn't hear you. What is the evidence in the record of the latter? Your Honor, there was, as Judge Kaplan found in denying the defense's Rule 29 motion both at the end of the government's case and in a written opinion after the verdict, the evidence was more than sufficient for all three murder cases. What was the evidence? Your Honor, so the evidence of the events leading up to the murder was critical in this case. Jose Santiago Ortiz and his brother, Jonathan Santiago, were being supplied by Ramon Cruz with flow heroin. Ramon Cruz was also supplying other crews in the area with that same flow. And there was evidence of at least two non-fatal shootings that the defendant, Santiago Ortiz, committed against rival crews in just the weeks leading up to the murder. After the second of those shootings, there was testimony from one of the cooperators that Jose Santiago Ortiz confronted his supplier, said to him, you can't do this. You can't supply all these people. You have to choose. It's either us or them. And then just weeks after that, the murder happened and Cruz chose.  And then Ramon Cruz, his brother, ran in to Jerry Tide at the pool hall late at night. They left the pool hall. They went back to their drug block. They got the gun that was used by their drug workers to protect their crew. And critically, they picked up their drug supplier. Ramon Cruz had nothing to do to do. Was to send Cruz a message that is that he ought to deal more with them or exclusively with them rather than the others he was supplying to? It was to send for. I'm sorry. Is that the argument? That is the argument. That's one of the arguments. It was to send Ramon Cruz the message that he ought to deal with them, that they were strong enough to protect themselves, that they wouldn't be disrespected. And Cruz said that in the call, that that's why he was there. He was there to show them that he had listened to the ultimatum and that he had chosen them, that he supported them. He says in the call, this was when we were just starting to get to know each other. I was there to prove to them that I meant business. There was also testimony, as Judge Bianco pointed out, that after the murder, Jose Santiago-Ortiz took over and the drug crew's drug business skyrocketed. They were bringing in thousands of dollars a week, and Ramon Cruz, as both cooperators testified and as the recording showed, Ramon Cruz began to supply only him. Jose Santiago-Ortiz bragged about the murder. Who's Santiago? I'm sorry? Who happened to Santiago, the previous? Santiago was arrested for the murder, and he went to prison. He was in prison for several years throughout the conspiracy when Jose took over. But he was continuing. The evidence at trial showed that he was continuing to be involved in the drug dealing from jail, just as Jose Santiago continued to be involved in the drug dealing when he went to jail in 2015. But operating our defendant here, the hyphenated Santiago, was outside and operating, according to the government, at this time. He was in operating charge outside of prison. Yes, that's correct, Your Honor. He took over, and as defense conceded at trial, he took over. He ran the drug business street operations, and as Cruz told the cooperating witness, Neal Lizardi, on recorded calls, and as Anthony Ramos, who was one of the workers, testified at trial, under Jose Santiago-Ortiz, because he was known to be strong and tough, because he had participated in the shootings and the murder, the business skyrocketed. So the events leading up to the murder, the murder itself and Cruz's participation in it, and the evolution of the business after the murder, all provided substantial evidence that Jose committed the murder, at least in part, which is all that's required, to benefit his drug trafficking business. I'd like to turn now to the evidentiary challenge, and that's the recorded conversation between Ramon Cruz, Jose Santiago-Ortiz's supplier, and Cruz's supplier, Neal Lizardi, who testified as a cooperating witness at trial. As Judge Bianco pointed out, Cruz's statements, Cruz's statements about his participation in the murder and his motive for being there, were directly relevant, as Judge Kaplan found when he admitted those portions of the statements. They went to the government's enterprise allegations. They went to Cruz's motive, and they were, from Cruz's motive, the government was permissibly argued that they affected Jose Santiago-Ortiz's motive at all. They also corroborated the cooperator's testimony, both of whom testified about why Ramon Cruz was there and the events leading up to and following the murder. With respect to the prejudice argument, this case is distinguishable, easily distinguishable from both Reyes and Forrester. In Reyes, the Court found that a case agent's largely irrelevant testimony about the history and the background of the investigation, her state of mind, and decisions that she made throughout the investigation were not relevant. And sprinkled throughout her testimony were hearsay statements about the directly implicated the defendant in a drug conspiracy, one of which amounted essentially to a confession by the defendant. The Court in that case gave limiting instructions with respect to some of those statements, but not all. And the AUSA referred to those statements in closing and, in fact, referred to one of those statements in a way that inaccurately characterized one of those statements in a way that made it even more inculpatory. By contrast, as I just discussed, Cruz's statements were highly relevant to the questions at trial, and the portions of the statements that Jose Santiago-Ortiz, as to Jose Santiago-Ortiz's motive, that did not come in for the truth were absolutely necessary. They couldn't be unentwined with the permissible non-hearsay portions of Cruz's statements. Judge Kaplan, when admitting these statements after a vigorous argument from both sides, went through line by line, made clear to the parties and then to the jury when he provided the limiting instructions twice in the trial, which statements, which portions of the statements were coming in for the truth and which were not. He then instructed the jury for what purposes they could consider the hearsay portions of those statements. And then in summation he instructed the jury that they weren't to consider those statements in determining why the defendant murdered Tide. Is that really a meaningful instruction? I mean, could the jury really follow that? If Cruz is saying they murdered him because of this, won't they think exactly the same thing about the defendant's state of mind? Well, Your Honor, of course, juries are presumed to understand and follow instructions. I think the fact that Judge Kaplan, he provided the instructions twice. He not only instructed the jury, you can't consider this portion, these limited – I mean, it was half of two halves of sentences. How could they not? How could they follow that instruction? Your Honor, I think that, I mean, Judge Kaplan was explicit that they shouldn't. But how could they do it? I mean, just as a matter of common sense, Cruz says, I thought the following, which is exactly what they thought, but yet you're – the government's asking the jury not to consider that in deciding what the defendant thought? I just don't know how that is possible. Your Honor, Judge Kaplan actually addressed that to the jury and said to them, you are not to consider. Ramon Cruz does not know what Jose Santiago-Ortiz was thinking or why he was there. He said that twice. He then, before closings, before summations, readdressed the issue with the parties, explicitly told me, I did the closing, you better be careful how you argue this in closing. In the closing, in contrast to the Reyes case, I didn't mention the hearsay portions or the Jose's motive portions. And when we did discuss Cruz's statements, we made clear, basically adopting Judge Kaplan's instruction, that those were only relevant to why Cruz was there. Your Honor, I see – Your Honors, I see my time has expired, so unless the Court has any further questions. Roberts. Thank you. Will you hear the rebuttal? Yes, Your Honors. In the Reyes and Forrester cases, it's not as if there was some sort of deficiency with the instructions that the district court gave to the jury. One of the factors that are discussed in Reyes is, can curative or limiting structure effectively protect against prejudice or misuse? And so, this essentially repeatedly highlighted the fact that there was, in fact, one person who ever said that, oh, yes, this had something to do with our drug organization. And another one of the factors discussed in Reyes that I want to briefly address is the question, can the needed explanation of background or state of mind be adequately communicated by other, less prejudicial evidence or by instructions? And in this case, if you look at Neil Lizardi's testimony, if you look at Anthony Ramos' testimony, it was chock full of other admissible and admitted evidence regarding those people's own motives, the existence and the drug conspiracy, which, again, the enterprise and conspiracy was never contested. The defense counsel repeatedly said he was not contesting it. And so Reyes and Forrester are directly on point with respect to the 403 issue here. And the government stated that with respect to our sufficiency arguments, that the events leading up to the murder were critical. Well, you have to examine Anthony Ramos' testimony about those events leading up to the murder, because there were drug-involved shootings, shootings between the drug gangs and around the Hughes Avenue area. But how do you respond to the government's argument that they brought along Cruz to send him the message that we are going to do the best job for you? That's not supported by anything by speculation. Even an inference under this Court's precedence wouldn't be proper there, because there was no evidence until that 2015 call between Lizardi and Ramos that that was the reason they brought him along. He was their ride. They were with him that night. They didn't start the night planning to go commit a murder in front of their bosses. They saw the people who they held responsible for slashing and beating his brother before. What do you mean he was their ride? What evidence was there that they needed his, whose car was it? They needed to have him there to give them the ride? Couldn't they drive themselves, get the gun and drive themselves back? What evidence is there that they just needed a ride? Well, he would have gone with them to the actual scene of the murder, but he said in his own call... My question, I guess, is if they weren't sending a message to him, why would they need him? Why couldn't they just get the gun and come back? They could have gotten the gun and come back, but the fact that they brought him is not by itself sufficient to say that this is why we're committing this murder, because we're going to show you that we're tough. We're going to show you that nobody messes with the flow of organization. The jury can't draw a reasonable inference that even though they didn't need him, that they brought him because they wanted him to see it and be involved. They can't draw that reasonable inference? Well, again, he didn't see it. He wasn't at the actual scene of the murder. I don't mean to say it, but, I mean, he was with them. He knew what was going on, right? He did, and so did later on after, where other people within the organization were told about it, but that itself doesn't mean that they were, that there was any reason that the defendant was trying to raise his own profile within the organization or try to raise the organization's profile in general. The evidence that the government relies on can be completely explained, except for by this erroneously admitted testimony, hearsay testimony, by the fact that there were these drug-involved shootings between the gangs, and after one of those shootings, the defendant told Cruz, his supplier, you better not mess with them and mess with us. That is, sell them the same product that you're selling us. And so that fully explains why they were getting closer. You know, it's, it doesn't seem to be from the record anything more than a coincidence that they were with Cruz that night. There's nothing besides speculation to say that this is the reason we brought him along, except for, again, five years later, that hearsay testimony. When Cruz first told Lizardi, I'm sorry, when Cruz first discussed this event, he was told about this event soon after it happened, he was discussing it in the record, he didn't say the things that he later said in 2015, which is another very important factor for this court to consider. And if there's no further questions from the court, we'll rest on our briefs with respect to the other points on appeal. Thank you. We'll reserve decision.